UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | |
|---|---|
| **In re** )<br><br>**NTELOS Inc., f/k/a,**<br>**CFW Communications Company,** *et al.,* [1]<br><br>Debtors. | )<br>)<br>) Chapter 11<br>)<br>) Case No. 03-32094 (DOT)<br>)<br>) Jointly Administered<br>)<br>) |

**FINAL ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3) AND 364(d)(1) AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO 11 U.S.C. §363 AND (II) GRANTING ADEQUATE PROTECTION TO PRE-PETITION SECURED PARTIES PURSUANT TO 11 U.S.C. §§ 361, 362, 363 AND 364**

Upon the motion (the "**Motion**"), dated March 4, 2003, of NTELOS Inc. (the

"**Borrower**") and its affiliated debtors, each as debtor and debtor-in-possession (collectively, the

---

[1] The Debtors are the following entities: NTELOS Inc. f/k/a CFW Communications Company, NTELOS Wireless Inc. f/k/a CFW Wireless Inc. f/k/a CFW Cellular Inc., NTELOS of Maryland Inc., NTELOS of Kentucky Inc., NTELOS PCS North Inc. f/k/a/ NTELOS of Pennsylvania Inc., NTELOS Cable of Virginia Inc. f/k/a/ CFW Cable of Virginia Inc., NTELOS Communications Services Inc. f/k/a CFW Communications Services Inc., NTELOS NetAccess Inc. f/k/a NetAccess, Inc., NTELOS Telephone Inc. f/k/a CFW Telephone Inc. f/k/a Clifton Forge-Waynesboro Telephone Company, NTELOS Network Inc. f/k/a CFW Network, Inc., NTELOS Licenses Inc. f/k/a CFW Licenses Inc., NTELOS Cable Inc. f/k/a CFW Cable Inc., R&B Communications, Inc., NTELOS Cornerstone Inc. f/k/a CFW Cornerstone, Inc., NTELOS PCS Inc. f/k/a CFW PCS Inc., Virginia RSA 6 Cellular Limited Partnership, Richmond 20MHz, LLC, NA Communications, Inc., Roanoke & Botetourt Telephone Company a/k/a Roanoke and Botetourt Telephone Company, R&B Network, Inc., Botetourt Leasing, Inc., R&B Cable, Inc., The Beeper Company, Virginia PCS Alliance, L.C., West Virginia PCS Alliance, L.C., and Virginia Telecommunications Partnership.

Benjamin C. Ackerly, VSB No. 9120
Michael C. Shepherd, VSB No. 47401
HUNTON & WILLIAMS
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Phone: (804) 788-8200
Fax: (804) 788-8218

Linda Lemmon Najjoum, VSB No. 22584
HUNTON & WILLIAMS
1751 Pinnacle Drive
Suite 1700
McLean, Virginia 22102
Phone: (703) 714-7400
Fax: (703) 714-7410

*Counsel for the Debtors and Debtors in Possession*

"**Debtors**"), in the above -captioned cases (the "**Cases**") pursuant to sections 105, 361, 362, 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3) and 364(d)(1) of title 11 of the United States Code, 11 U.S.C. §§101, et seq. (the "**Bankruptcy Code**"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), seeking, among other things:

(a) authorization for the Borrower to obtain post petition financing (the "**Financing**"), and for the other Debtors (the "**Guarantors**") to guaranty the Borrower's obligations in connection with the Financing, up to the aggregate principal amount of $35 million (the actual available principal amount at any time being subject to those conditions set forth in the Documents (as defined below)), from Wachovia Bank, National Association ("**Wachovia**"), acting as Administrative Agent and Collateral Agent (in such capacities, the "**Agent**"), for itself and a syndicate of financial institutions (together with Wachovia and including the fronting banks for the letters of credit, the "**DIP Lenders**") to be arranged and managed by Wachovia Securities, Inc. ("**WSI**");

(b) the granting of adequate protection to the lenders (the "**Pre-Petition Secured Lenders**") under or in connection with that certain Credit Agreement, dated as of July 26, 2000 (as heretofore amended, supplemented or otherwise modified, the "**Pre-Petition Credit Agreement**"), among the Borrower, the lenders listed therein, the letter of credit issuing bank(s) named therein, and Wachovia, as successor administrative agent for the Pre-Petition Secured Lenders (the "**Pre-Petition Agent**"), and that certain Security Agreement, dated as of July 26, 2000, between Borrower and Wachovia as successor Collateral Agent (as heretofore amended, supplemented or otherwise modified, the "**Security**

2

**Agreement**" and, collectively with the Pre-Petition Credit Agreement, and the mortgages and all other documentation executed in connection therewith (including, for the avoidance of doubt, any Hedge Agreements as defined in the Pre-Petition Credit Agreement), the "**Existing Agreements**"), whose liens and security interests are being primed by the Financing;

(c) authorization for the Debtors to use cash collateral (as such term is defined in the Bankruptcy Code) in which the Pre-Petition Secured Lenders have an interest, and the granting of adequate protection to the Pre-Petition Secured Lenders with respect to, *inter alia*, such use of their cash collateral and all use and diminution in the value of the Pre-Petition Collateral (as defined below);

(d) pursuant to Bankruptcy Rule 4001, that an interim hearing (the "**Interim Hearing**") on the Motion be held before this Court to consider entry of the proposed interim order annexed to the Motion (the "**Interim Order**") (a) authorizing the Borrower, on an interim basis, to forthwith borrow or obtain letters of credit from the DIP Lenders under the Documents up to an aggregate principal and/or face amount not to exceed $15 million (subject to any limitations of borrowings under the Documents), (b) authorizing the Debtors' use of cash collateral, and (c) granting the adequate protection described herein; and

(e) that this Court schedule a final hearing (the "**Final Hearing**") to be held within 25 days of the entry of the Interim Order to consider entry of a final order authorizing the balance of the borrowings and letter of credit issuances under the Documents on a final basis, as set forth in the Motion and the Documents filed with this Court.

An Interim Hearing on the Motion having been held by this Court on March 4, 2003, at which the Court (a) issued and entered the Interim Order authorizing the Borrower to borrow or obtain letters of credit up to an aggregate principal and/or face amount of $15 million (subject to any limitations of borrowings under the Documents) (plus interest, fees and other expenses provided for in the Documents) of the Financing from the DIP Lenders as provided for in the Interim Order and (b) scheduled the Final Hearing to consider entry of an order authorizing the balance of the Financing, all as set forth in the Motion, the Interim Order, the Revolving Credit and Guaranty Agreement filed with this Court (Docket No. 58) (the "DIP Credit Agreement") and related loan documents.

Notice of the Motion, the Motion and the relief requested therein having been served by the Debtors on the Office of the United States Trustee for the Eastern District of Virginia, counsel for the DIP Agent, counsel for the Pre-Petition Agent, counsel for the FCC, RUS and RTB (as defined in the Motion), the Civil Process Clerk at the Office of the United States Attorney for the Eastern District of Virginia and the Attorney General of the United States, the Indenture Trustee for the Senior Noteholders (as defined in the Motion), the Indenture Trustee for the Subordinated Noteholders (as defined in the Motion), the State Corporation Commission of the Commonwealth of Virginia and the unsecured creditors appearing on the Debtors' Bankruptcy Rule 1007(d) list, and the Interim Order and the Notice of Final Hearing having been served by the Debtors on the Limited Service List filed on March 10, 2003 (Docket No. 63) and Debtors' Consolidated List of 31 Largest Unsecured Creditors.

The Final Hearing having been held by this Court on March 24, 2003.

Upon the record made by the Debtors at the Interim Hearing and the Final Hearing, and after due deliberation and consideration and sufficient cause appearing therefor;

4

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.     *Jurisdiction.*  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§157(b) and 1334.

2.     *Notice.*  Under the circumstances, the notice given by the Debtors of the Motion, the Interim Hearing and the Final Hearing constitutes due and sufficient notice thereof and complies with Rule 4001(c).

3.     *Debtors' Stipulations.*  Without prejudice to the rights of any other party (but subject to the limitations thereon contained in paragraph 15 below), the Debtors admit, stipulate and agree that:

(a)(i)  as of the filing of the Debtors' chapter 11 petitions (the "**Petition Date**"), the Borrower was indebted and liable to the Pre-Petition Secured Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $260,500,000.00 in respect of loans made by the Pre-Petition Secured Lenders pursuant to, and in accordance with the terms of, the Existing Agreements, plus interest thereon and fees, expenses and other obligations incurred in connection therewith as provided in the Existing Agreements (collectively, the "**Pre-Petition Debt**"), (ii) no portion of the Pre-Petition Debt is subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Pre-Petition Secured Lenders, the Pre-Petition Agent and their respective affiliates, agents, officers, directors, employees and attorneys;

(b)  the liens and security interests granted to the Pre-Petition Agent pursuant to the Security Agreement and pursuant to all mortgages, deeds of trust and other security

5

documents executed by any of the Debtors in favor of the Pre-Petition Agent (for its benefit and for the benefit of the Pre-Petition Secured Lenders) in connection with the Existing Agreements, are (i) valid, perfected, enforceable (except as enforcement may be limited by the Bankruptcy Code), first-priority liens and security interests in the personal and real property described in the Existing Agreements (the "**Pre-Petition Collateral**"), (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) the liens and security interests granted to the Agent (for its benefit and for the benefit of the DIP Lenders) pursuant to this Order and the Documents (the "**DIP Liens**"), (B) the Carve Out (as defined below) to which the DIP Liens are subject and (C) valid, perfected and unavoidable liens permitted under the Existing Agreements to the extent such permitted liens are senior to or pari passu with the liens of the Pre-Petition Agent on the Pre-Petition Collateral; and

(c) the aggregate value of the Pre-Petition Collateral exceeds the aggregate amount of the Pre-Petition Debt.

4.      *Findings Regarding the Financing.*

(a) Good cause has been shown for the entry of this Order.

(b) The Debtors have an immediate need to obtain the Financing and use Cash Collateral (as defined below) in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital needs.  The ability of the Debtors to obtain sufficient working capital and liquidity through the use of cash collateral, incurrence of new indebtedness for borrowed money and other financial

accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

(c) The Debtors are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense, and a credit facility in the amount and on the terms provided by the Financing is unavailable to the Debtors without the Debtors granting to the Agent and the DIP Lenders, subject to the Carve Out, the DIP Liens and the Superpriority Claims (as defined below).

(d) The terms of the Financing and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and are supported by reasonably equivalent value and fair consideration.

(e) The Financing has been negotiated in good faith and at arm's length between the Debtors, the Agent and the DIP Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the Financing and the Documents, including without limitation, (i) all loans made to, and all letters of credit issued for the account of, the Debtors pursuant to the Revolving Credit and Guaranty Agreement substantially in the form attached as Exhibit A to the Motion (the "**DIP Credit Agreement**"), (ii) any "Obligations" (as defined in the DIP Credit Agreement) arising under or in connection with the Loan Documents (as defined in the DIP Credit Agreement), including credit extended in respect of overdrafts and other depository, treasury, and cash management services and other clearing services provided by the Agent, Branch Banking and Trust Company ("**BB&T**"), Bank of America or any of their respective affiliates and (iii) any Obligations of the Debtors on account of their credit card program with BB&T or its affiliates (all of the foregoing in clauses (i), (ii) and (iii) collectively,

7

the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Lenders and their affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code.

(f)  The Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent entry of this Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the Financing and the use of Cash Collateral in accordance with this Order and the Documents is therefore in the best interest of the Debtors' estates.

5.      *Authorization of the Financing and the Documents.*

(a)  The Borrower is hereby authorized to borrow and obtain letters of credit pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guaranty such borrowings and the Borrower's obligations with respect to such letters of credit, up to an aggregate principal and/or face amount of $35 million (inclusive of amounts authorized under the Interim Order), plus interest, fees and other expenses provided for in the Documents, in accordance with the terms of this Order and the Documents, which shall be used for all purposes permitted under the Documents, including, without limitation, to provide working capital and make capital expenditures for the Borrower and the Guarantors and to pay interest, fees and expenses in accordance with this Order and the Documents.  In addition to such amounts and obligations, the Debtors are authorized to incur (i) Obligations on account of their credit card program with BB&T or its affiliates and (ii) overdrafts and related liabilities arising from treasury, depository and cash management services or in connection with any automated clearing house fund transfers provided to or for the benefit of the Debtors by Wachovia, BB&T, Bank of America or any of their respective affiliates; provided, however, that nothing herein shall require

8

Wachovia, BB&T, Bank of America or any other party to incur overdrafts or to provide any such services or functions to the Debtors.

(b)  In furtherance of the foregoing, each Debtor is authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution, recordation of filings of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary for the Debtors' performance of the Financing, including, without limitation:

(i)  the execution, delivery and performance of the Loan Documents and any exhibits attached thereto, including, without limitation, the DIP Credit Agreement and the Security Agreement (as defined in the DIP Credit Agreement) (collectively, and together with the Fee Letter (as defined in the DIP Credit Agreement), the "**Documents**"),

(ii)  the execution, delivery and performance of one or more amendments to the DIP Credit Agreement and the Security Agreement for, among other things, the purpose of adding additional Subsidiary Guarantors as parties to the DIP Credit Agreement and Security Agreement or additional financial institutions as DIP Lenders and reallocating the commitments for the Financing among the DIP Lenders, in each case in such form as the Debtors, the Agent and the DIP Lenders may agree (it being understood that no further approval of the Court shall be required for amendments to the DIP Credit Agreement that add additional Subsidiary Guarantors or do not shorten the maturity of the extensions of credit thereunder or increase the commitments, the rate of interest or the letter of credit fees payable thereunder); provided that the Debtors shall provide to the Committee two business days' notice of any amendment to the DIP Credit Agreement or, if providing such notice is not reasonably practicable, such notice as is

9

reasonably practicable; provided, however that the effectiveness of any amendment shall not be contingent on such notice being sent or received.

(iii)  the non refundable payment to the Agent or the DIP Lenders, as the case may be, of the fees referred to in the DIP Credit Agreement and in the Fee Letter and such Letter of Credit Fees, Commitment Fees (each as defined in the Documents) and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable fees and expenses of the professionals retained as provided for in the Documents, and

(iv)  the performance of all other acts required under or in connection with the Documents.

(c)  Upon execution and delivery of the Documents, the Documents shall constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of the Documents.  No obligation, payment, transfer or grant of security under the Documents or this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff or counterclaim.

6.     *Superpriority Claims.*

(a)  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims under sections 105, 326, 328, 330, 331, 506(c), 507(a) or 726 of the Bankruptcy Code (the "**Superpriority Claims**"), which

allowed claims shall be payable from and have recourse to all pre and post-petition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve Out.

(b)  For purposes hereof, the "**Carve Out**" means (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code and (ii) an amount not exceeding $1,750,000.00 in the aggregate, which amount may be used after the occurrence and during the continuance of an Event of Default (as defined in the DIP Credit Agreement), to pay fees or expenses incurred by the Debtors and any statutory committees appointed in the Cases (each, a "**Committee**") in respect of (A) allowances of compensation for services rendered or reimbursement of expenses awarded by the Bankruptcy Court to the Debtors' or any Committee's professionals and (B) the reimbursement of expenses allowed by the Bankruptcy Court incurred by Committee members in the performance of their duties; provided, however, that the dollar limitation in this clause 6(b)(ii) on fees and disbursements shall neither be reduced nor increased by (i) the amount of any compensation or reimbursement of expenses incurred, awarded or paid prior to the occurrence of an Event of Default in respect of which the Carve Out is invoked and (ii) any retainer fees paid to the Debtors' professionals prior to the Petition Date and *provided, further*, that nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (A) and (B) above, and *provided, further*, that cash in the L/C Cash Collateral Account (as defined in the DIP Credit Agreement), shall not be subject to the Carve Out.

7.    *DIP Liens.*  As security for the DIP Obligations, effective and perfected upon the date of this Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing

11

statements or other similar documents, the following security interests and liens are hereby granted to the Agent for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "**Collateral**"), subject, only in the event of the occurrence and during the continuance of an Event of Default, to the payment of the Carve Out:

(a) <u>First Lien on Cash Balances and Unencumbered Property</u>. Pursuant to section 364(c)(2) of the Bankruptcy Code, the Agent is hereby granted (for the benefit of itself and the DIP Lenders) a perfected first priority senior security interest in and lien upon all pre- and post-petition property of the Debtors, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date is not subject to valid, perfected and non-avoidable liens (collectively, "**Unencumbered Property**"), including without limitation, all cash and cash collateral of the Debtors (whether maintained with the Agent or otherwise) and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing. Unencumbered Property shall exclude the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**"), but shall include any proceeds or property recovered, unencumbered or otherwise the subject of successful Avoidance Actions.

(b) <u>Liens Priming Pre-Petition Secured Lenders' Liens</u>. Pursuant to section 364(d)(1) of the Bankruptcy Code, the Agent (for the benefit of itself and the DIP Lenders) is

12

hereby granted a perfected first priority senior priming security interest in and lien upon all pre and post-petition property of the Debtors (including, without limitation, cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject to the existing liens presently securing the Pre-Petition Debt (including in respect of issued but undrawn letters of credit). Such security interests and liens shall be senior in all respects to the interests in such property of the Pre Petition Secured Lenders arising from current and future liensof the Pre-Petition Secured Lenders (including, without limitation, adequate protection liens granted hereunder), but shall not be senior to any valid, perfected and unavoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date, or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Pre-Petition Secured Lenders become subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(c) <u>Liens Junior to Certain Other Liens</u>. Pursuant to section 364(c)(3) of the Bankruptcy Code, the Agent (for the benefit of itself and the DIP Lenders) is hereby granted perfected security interests in and liens upon all pre- and post-petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 7, as to which the liens and security interests in favor of the Agent will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence

13

immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens are junior to such valid, perfected and unavoidable liens.

(d) <u>Liens Senior to Certain Other Liens</u>. The DIP Liens and the Adequate Protection Liens (as defined below) shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors.

8.     *Protection of DIP Lenders' Rights.*

(a) So long as there are any borrowings or letters of credit outstanding, or the DIP Lenders have any Commitment (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, the Pre-Petition Agent and Pre-Petition Secured Lenders shall take no action to foreclose upon the liens granted thereto pursuant to the Existing Agreements or this Order, including any action against any Non-filing Subsidiaries (as defined in the DIP Credit Agreement), or otherwise exercise remedies against any Collateral, except to the extent authorized by an order of this Court.

(b) The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified (i) to permit the Agent and the DIP Lenders to exercise, upon the occurrence of an Event of Default, all rights and remedies under the Documents other than those rights and remedies against the Collateral and (ii) to the extent necessary to permit the Agent and the DIP Lenders to exercise, upon the occurrence and during the continuance of an Event of Default and the giving of five business days' prior written notice to the Debtors and to the

14

Committee, and as otherwise required in the DIP Credit Agreement, all rights and remedies against the Collateral provided for in the Documents (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the Agent or any DIP Lender).  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors and the Pre-Petition Secured Lenders hereby waive their right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Agent or the DIP Lenders set forth in this Order or the Documents.  In no event shall the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

9.     *The Cash Collateral.*  To the extent any funds were on deposit with the Pre-Petition Secured Lenders as of the Petition Date, such funds were subject to rights of setoff.  By virtue of such setoff rights, such funds are subject to a lien in favor of such Pre-Petition Secured Lenders pursuant to sections 506(a) and 553 of the Bankruptcy Code.  The Pre-Petition Secured Lenders are obligated, to the extent provided in the Existing Agreements, to share the benefit of such liens with the other Pre-Petition Secured Lenders party to such Existing Agreements based upon their respective *pro rata* shares of the obligations under such Existing Agreements.  Any proceeds of the Pre-Petition Collateral (including funds on deposit at the Pre-Petition Secured Lenders or at any other institution as of the Petition Date) are cash collateral of the Pre-Petition Secured Lenders within the meaning of section 363(a) of the Bankruptcy Code.  All funds subject to such setoff rights and all such proceeds of Pre-Petition Collateral are referred to herein as "**Cash Collateral**."

15

10. *Use of Cash Collateral.* The Debtors are hereby authorized to use all Cash Collateral of the Pre-Petition Secured Lenders, and Pre-Petition Secured Lenders are directed promptly to turn over to the Debtors all Cash Collateral received or held by them, *provided* that the Pre-Petition Secured Lenders are granted adequate protection as hereinafter set forth. The Debtors' right to use Cash Collateral shall terminate automatically on the Termination Date (as defined in the DIP Credit Agreement) and the Agent shall contemporaneously give notice of the occurrence thereof to the Debtors and the Committee by telecopier or electronic mail; provided, however, that the effectiveness of the Termination Date shall not be contingent on such notice being sent or received. In addition, if the Borrower voluntarily terminates all Commitments prior to the Maturity Date (as each such term is defined in the DIP Credit Agreement), the Debtors shall, for the benefit of the Pre-Petition Secured Lenders, continue to comply with the requirements of Article V of the DIP Credit Agreement and, upon any failure by the Debtors to observe any such requirement or upon the occurrence of any event that would have constituted an Event of Default under the DIP Credit Agreement prior to the termination of the Commitment, the Pre-Petition Agent on behalf of the Pre-Petition Secured Lenders shall have the immediate right unilaterally to terminate the Debtors' right to use Cash Collateral.

11. *Adequate Protection.* The Pre-Petition Secured Lenders are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, equal in amount to the aggregate diminution in value of the Pre-Petition Secured Lenders' interests in the Pre-Petition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Pre-Petition Collateral, the priming of the Pre-Petition Agent's security interests and liens in the Pre-Petition

16

Collateral by the Agent and the DIP Lenders pursuant to the Documents and this Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code. As adequate protection, the Pre-Petition Agent and the Pre-Petition Secured Lenders are hereby granted the following (collectively, the "**Adequate Protection Obligations**"):

(a) Adequate Protection Liens. The Pre-Petition Agent (for itself and for the benefit of the Pre-Petition Secured Lenders) is hereby granted (effective and perfected upon the date of this Order and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements) a replacement security interest in and lien upon all the Collateral, subject and subordinate only to (i) the security interests and liens granted to the Agent for the benefit of the DIP Lenders in this Order and pursuant to the Documents and any liens on the Collateral to which such liens so granted to the Agent are junior and (ii) the Carve Out (the "**Adequate Protection Liens**");

(b) Section 507(b) Claim. The Pre-Petition Agent and the Pre-Petition Secured Lenders are hereby granted, subject to the payment of the Carve Out, a Superpriority Claim as provided for in section 507(b) of the Bankruptcy Code, immediately junior to the claims under section 364(c)(1) of the Bankruptcy Code held by the Agent and the DIP Lenders;

(c) Principal, Interest, Fees and Expenses. The Pre-Petition Agent shall receive from the Debtors (i) scheduled principal amortization payments as set forth in Section 2.04 of the Pre-Petition Credit Agreement, (ii) immediate cash payment of all accrued and unpaid interest on the Pre-Petition Debt and letter of credit fees at the rates provided for in the Existing Agreements, and all other accrued and unpaid fees and disbursements (including, but not limited to, fees owed to the Pre-Petition Agent) owing to the Pre-Petition Agent under the Existing Agreements and incurred prior to the Petition Date, (iii) current cash payments of all fees and

expenses payable to the Pre-Petition Agent under the Existing Agreements, including, but not limited to, the reasonable fees and disbursements of counsel, financial and other consultants for the Pre-Petition Agent and (iv) on the first business day of each month, all accrued but unpaid interest on the Pre-Petition Debt, and letter of credit and other fees at the non-default contract rate applicable on the Petition Date (including LIBOR pricing options) under the Existing Agreements, provided that, without prejudice to the rights of any other party to contest such assertion, the Pre-Petition Secured Lenders reserve their rights to assert claims for the payment of additional interest calculated at any other applicable rate of interest (including, without limitation, default rates), or on any other basis, provided for in the Existing Agreements;

(d) <u>Monitoring of Collateral</u>. The Pre-Petition Secured Lenders shall be permitted to retain expert consultants and financial advisors at the reasonable expense of the Debtors, which consultants and advisors shall be given reasonable access for purposes of monitoring the business of the Debtors and the value of the Collateral;

(e) <u>Payment from Proceeds of Collateral</u>. The Debtors are authorized and directed to pay to the Pre-Petition Agent, for the benefit of the Pre-Petition Secured Lenders, 100% of the Net Cash Proceeds (as defined in the DIP Credit Agreement) resulting from any sale, lease, transfer, license or other disposition of property outside the ordinary course of business or of any surplus property, all as permitted by the DIP Credit Agreement, that are not required to be paid in respect of the DIP Obligations; and

(f) <u>Limitation on Charging Expenses Against Collateral</u>. Except to the extent of the Carve Out and the amounts of any compensation or reimbursement of expenses incurred, awarded or paid prior to the occurrence of an Event of Default in respect of which the Carve Out is invoked, no expenses of administration of the Cases or any future bankruptcy proceeding that

18

may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Agent and/or the Pre-Petition Agent, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders.

12.     *Hedging Parties Adequate Protection.*  Counterparties to the Debtors' obligations under the Hedge Agreements (the "Hedging Parties") are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in value of the Hedging Parties' interests in the Pre-Petition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Pre-Petition Collateral, the priming of the Hedging Parties' security interests and liens in the Pre-Petition Collateral by the Agent and the DIP Lenders pursuant to the Documents and this Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.  As adequate protection, the Hedging Parties shall receive from the Debtors all regularly scheduled interest payments under the Hedging Agreements.  So long as the Hedging Parties are receiving such payments, the Hedging Parties shall not, during the pendency of the Cases, be entitled to assert set-off rights or collateral remedies with respect to the Hedge Agreements or as otherwise permitted by the Bankruptcy Code without a further order of this Court.

13.     *Reservation of Rights of Pre-Petition Secured Lenders.*  Under the circumstances and given that the above described adequate protection is consistent with the Bankruptcy Code

19

including section 506(b) thereof, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Pre-Petition Secured Lenders. However, the Pre-Petition Agent and the Pre-Petition Secured Lenders may request further or different adequate protection, and the Debtors or any other party may contest any such request. Moreover, except as provided in paragraph 12 hereof in the case of the Hedging Parties, nothing contained in this Order (including, without limitation, the authorization of the use of Cash Collateral) shall impair or modify the right of any Pre-Petition Secured Lender or DIP Lender that is a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of the Debtors to contest such assertions).

14. *Perfection of DIP Liens and Adequate Protection Liens.* The Agent, the DIP Lenders, the Pre-Petition Agent and the Pre-Petition Secured Lenders are hereby authorized, but not required, to file or record financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the liens and security interests granted to them hereunder. Whether or not the Agent on behalf of the DIP Lenders or the Pre-Petition Agent on behalf of the Pre-Petition Secured Lenders shall, in their sole discretion, choose to file such financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid and perfected at the time and on the date of entry of this Order. The Pre-Petition Agent and Pre-Petition Secured Lenders shall not file any such financing statements, mortgages, notices of lien or similar instruments, or otherwise confirm perfection of the security interests and liens granted thereto hereunder, unless the Agent on behalf of the DIP Lenders shall theretofore have done so. Upon the request of the

20

Agent, each of the Pre-Petition Agent and Pre-Petition Secured Lenders, without any further consent of any party, is authorized to take, execute and deliver such instruments (in each case without representation or warranty of any kind) to enable the Agent to further validate, perfect, preserve and enforce DIP Liens. The Agent and the Pre-Petition Agent, in their respective discretion, each may file a xerographic copy of this Order as a mortgage, financing statement or similar perfection document with any recording officer designated to file financing statements or with any registry of deeds or similar office in which the Debtors have real or personal property.

      15.    *Preservation of Rights Granted Under the Order.*

      (a) No claim or lien having a priority superior to or *pari passu* with those granted by this Order to the Agent and the DIP Lenders or to the Pre-Petition Agent and the Pre-Petition Secured Lenders, respectively, shall be granted or allowed while any portion of the Financing (or any refinancing thereof) or the Commitments related to the Financing or the DIP Obligations or the Adequate Protection Obligations remain outstanding, and the DIP Liens and the Adequate Protection Liens shall not be (i) subject or junior to any lien or security interest that is avoided and preserved for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

      (b) Unless all DIP Obligations shall have been paid in full (and, with respect to outstanding letters of credit issued pursuant to the DIP Credit Agreement, cash collateralized in accordance with the provisions of the DIP Credit Agreement) and the Adequate Protection Obligations shall have been paid in full, the Debtors shall not seek, and it shall constitute an Event of Default and a termination of the right to use Cash Collateral if any of the Debtors seek,

or if there is entered, an order dismissing any of the Cases.  If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is atany time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, priming liens, security interests and replacement security interests granted to the Agent and the Pre-Petition Agent pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcingthe claims, liens and security interests referred to in (i) above.

(c)  If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice by the Agent or Pre-Petition Agent, as applicable, of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Credit Agreement with respect to any DIP Obligations or Adequate Protection Obligations.  Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral, or DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the Agent, the DIP Lenders, the PrePetition Agent or the Pre-Petition Secured Lenders prior to the actual receipt of written notice by the Agent and Pre Petition Agent of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the Agent, DIP Lenders,

22

Pre-Petition Agent and Pre-Petition Secured Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in this Order and/or pursuant to the Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(d)  The obligations of the Debtors under this Order and the Documents in respect of any DIP Obligations shall not be discharged by the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived such discharge as to any remaining DIP Obligations.

16.     *Effect of Stipulations on Third Parties.*  The stipulations and admissions contained in this Order, including, without limitation, in paragraph 3 of this Order, shall be binding upon the Debtors in all circumstances and shall be binding upon all other parties in interest, including, without limitation, any Committee, unless (a) a party in interest has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, inter alia, in paragraph 16) by no later than the date that is 60 days after the formation of the Official Committee of Unsecured Creditors in the Cases (or such later date as has been agreed to, in writing, by the Pre-Petition Agent in its sole discretion), (i) challenging the validity, enforceability, priority or extent of the Pre-Petition Debt or the Pre-Petition Agent's or the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral or (ii) otherwise asserting any claims or causes of action against the Pre-Petition Agent or the Pre-Petition Secured Lenders, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter.  If no such adversary proceeding or contested matter is timely filed, (x) the Pre-Petition Debt and all related obligations of the Debtors (the "**Pre-Petition Obligations**") shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in

23

the Cases and any subsequent chapter 7 cases, (y) the Pre-Petition Agent's and the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to recharacterization, subordination or avoidance and (z) the Pre-Petition Obligations, the Pre-Petition Agent's and the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral and the Pre-Petition Agent and the Pre-Petition Secured Lenders shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 or 11 trustee appointed or elected for any of the Debtors).  If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraph 3 shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter.

17.  *Limitation on Use of Financing Proceeds and Collateral*  Notwithstanding anything herein or in any other Order by this Court to the contrary, no borrowings, letters of credit, Cash Collateral, Collateral or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the Documents or the Existing Agreements, or the liens or claims granted under this Order, the Documents or the Existing Agreements; provided, however, that such limitation shall not apply to costs to investigate whether any such objection, contest or defense may be brought or asserted, (b) assert any claims, counterclaims, defenses or causes of action against the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders or their respective affiliates, (c) prevent, hinder or otherwise delay the Agent's or the Pre-Petition Agent's assertion,

24

enforcement or realization on the Cash Collateral or the Collateral in accordance with the Documents, the Existing Agreements or this Order, (d) seek to modify any of the rights granted to the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders hereunder or under the Documents or the Existing Agreements, in each of the foregoing cases without such parties' prior written consent, or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) in accordance with the Final Budget (as defined in the DIP Credit Agreement) as approved by the Agent in its sole discretion.

18. *Wachovia as Collateral Agent.* To the extent Wachovia, in its role as Collateral Agent under the Existing Agreements, is the secured party under any Control Agreements (as defined in the Existing Agreements), listed as loss payee under the Debtors' insurance policies as required under the Security Agreement or is the secured party under any other Existing Agreement, Wachovia, in its role as Collateral Agent under the DIP Credit Agreement, is also deemed to be the secured party under such Control Agreements, loss payee under the Debtors' insurance policies and the secured party under any other Existing Agreement and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Lenders in accordance with the DIP Credit Agreement and second, subsequent to indefeasible payment in full of all DIP Obligations, for the benefit of the Pre-Petition Secured Lenders under the Existing Agreements.

19. *Order Governs.* In the event of any inconsistency between the provisions of this Order and the Documents, the provisions of this Order shall govern.

20. *Binding Effect; Successors and Assigns.* The Documents and the provisions of this Order shall be binding upon all parties in interest in these Cases, including, without

limitation, the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders and the Debtors and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of anyof the Debtors) and shall inure to the benefit of the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders and the Debtors and their respective successors and assigns.

Dated: _____, 2003
          Richmond, Virginia

_____
UNITED STATES BANKRUPTCY JUDGE